# USDC SCAN INDEX SHEET










```
RYC    9/28/04    10:30
3:02-CV-01900    SANYO ENERGY V. BYD COMPANY LIMITED
*278*
*P/A.*
```

1  Stuart Lubitz (Cal. Bar No. 035471)
   Laurence H. Pretty (Cal. Bar No. 56019)
2  Lawrence J. McClure (Cal. Bar No. 176090)
   Sanjesh P. Sharma (Cal. Bar No. 203239)
3  HOGAN & HARTSON L.L.P.
   500 South Grand Avenue, Suite 1900
4  Los Angeles, California 90071
   Telephone: (213) 337-6700
5  Facsimile: (213) 337-6701

6  Attorneys for Plaintiff
   SANYO ENERGY (USA) CORPORATION
7

FILED
04 SEP 27 PM 1:09
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11  SANYO ENERGY (USA) CORPORATION, a        Case No. 02-CV-1900B (AJB)
    Delaware corporation,
12                                            **MEMORANDUM OF POINTS AND
           Plaintiff and Counter-defendant,   AUTHORITIES IN SUPPORT OF
13                                            SANYO ENERGY (USA)
           v.                                 CORPORATION'S MOTION TO
14                                            PRECLUDE DUPLICATIVE AND
    BYD COMPANY LIMITED, a People's           CUMULATIVE EXPERT WITNESS
15  Republic of China joint stock limited company, TESTIMONY ON ALLEGED
    BYD AMERICA CORPORATION, an Illinois      IMPOSSIBLE, FALSE OR
16  corporation                               FABRICATED DATA IN THE '138
                                              PATENT**
17         Defendants and
           Counter-claimants.                 Date: November 22, 2004
18                                            Time: 10:30 a.m.
                                              Courtroom: 2, 4th Floor

## I. INTRODUCTION

On April 23, 2004, BYD filed a Second Amended Answer, alleging a new affirmative defense and counterclaim that the '138 patent is unenforceable because Sanyo engaged in inequitable conduct by submitting impossible, or false data and test results in its application to the USPTO. See Second Amended Answer, Dkt. # 215. To support its theory of this alleged false data, BYD mustered expert opinions of two scientific experts, Dr. Kimio Kinoshita and Dr. Jeffrey Dahn. Kinoshita's expert report is confined to the subject of the alleged impossible, false or fabricated data in the '138 patent. See Confidential Declaration of Sanjesh Sharma In Support of Sanyo's Motion to Preclude Duplicative and Cumulative Expert Witness Testimony On Alleged Impossible, False or Fabricated Data in the '138 Patent ("Conf. Sharma Decl."), Exh. 1. Dahn also opines on the alleged impossible results as well as to the subject matters of non-infringement and invalidity based on prior art. Id., Exh 2.

Dr. Kinoshita and Dahn's opinions on the alleged impossible data are duplicative and cumulative of each other. Besides the apparent overlap in the specific data points they consider to be impossible in the '138 patent, they both claim to have considered the other's opinions and agree with them. Hence, there is no substantial difference in their opinions on this subject matter. At his deposition, Dr. Kinoshita admitted that the subject matter of his opinions on impossible data overlaps with that of Dr. Dahn. He further testified that he and Dahn are equally capable of addressing all issues relating to BYD's theories of the alleged impossible data in the '138 patent. Likewise, Professor Dahn testified that his professed expertise is so extensive as to allow him to opine on all aspects of the alleged impossible data. Despite these admissions, BYD refuses to select one particular expert to testify as to the issue of impossible data, and instead, plans to offer both experts on the same issue.

Sanyo will be unfairly prejudiced if BYD is allowed to present cumulative expert testimony on the alleged impossible data. The cumulative and repetitive testimony from multiple experts on this issue may mislead the jury into placing disproportionate weight on the issue, thereby prejudicing Sanyo. In addition, presentation of cumulative expert testimony will waste time and resources. Rule 403 of the Federal Rules of Evidence allows this Court broad

discretion to preclude cumulative expert testimony to prevent prejudice and waste of time. <u>Hill v. Rollieri</u>, 615 F. 2d 886, 890 (9th Cir. 1980).

When Sanyo first raised the issue of cumulative expert witness testimony at the hearing on BYD's Motion for Leave to File a Second Amended Answer and Counterclaims, this Court clarified that it will not allow the parties to present multiple experts to provide cumulative testimony. <u>Pretty Decl.</u>, <u>Exh. 3</u> (transcript from April 12, 2004 hearing; 29:4-30:19). Consistent with the Federal Rules and Evidence, and the Court's remarks at the April 12th hearing, Sanyo now moves the Court for an Order precluding any duplicative and cumulative expert testimony on the issue of the alleged impossible false, or fabricated data. Sanyo further requests that the Court fashion its Order such that (1) only one expert witness is presented by each side to testify on the entire issue of the alleged impossible, false or fabricated data, <u>or</u> (2) if multiple expert witnesses are presented to opine on the issue of the alleged impossible data, then, each expert witness is precluded from addressing data points, or tables and figures addressed by another expert witness from the same side.

## II.    FACTUAL BACKGROUND

### A.    Dahn's Testimony Overlaps and Is Cumulative Of Kinoshita's Testimony

Kinoshita's testimony on the issue of the alleged impossible, false and fabricated data as well as his basis and reasons is essentially cumulative and redundant to the opinions expressed by Dahn. In fact, based on their deposition testimony, there is no substantial difference between their opinions on the alleged impossible, false or fabricated test results.

When asked which data points in the '138 patent he considers impossible, Kinoshita testified that in his opinion K13 in Table 2, P12 and P13 in Table 5, A1 in Table 16, B1 in Table 17, C1 in Table 18, D1 in Table 19, E1 in Table 20, F1 in Table 21, G1 in Table 22, I1 in Table 24, and J19 and J20 in Table 25 are impossible. <u>Conf. Sharma Decl.</u>, <u>Exh. 3</u>, (Kinoshita Depo. 73:2-74:16). When asked the same question, Dahn identified the following data points: M9 in Table 3, P12 and P13 in Table 5, A1 and A2 in Table 16, B1 and B2 in Table 17, C1 and C2 in Table 18, D1, D2, and D3 in Table 19, E1 and E2 in Table 20, F1 and F2 in Table 21, G1 and G2 in Table 22, H1 in Table 23, I1 and I2 in Table 24, and J19 and J20 in Tables 25 and 26. <u>Id.</u>,

MEMORANDUM IN SUPPORT OF MOTION
TO PRECLUDE DUPLICATIVE AND
CUMULATIVE EXPERT TESTIMONY    3

CASE NO.: 02-CV-1900B (AJB)

\\LA - 89207/0001 - 216365 v2

1  Exh. 4, (Dahn Depo. 145:2-147:9).

2  As illustrated in the chart below, the experts' testimony as to the impossibility of data
3  points P12 and P13 in Table 5, A1 in Table 16, B1 in Table 17, C1 in Table 18, D1 in Table 19,
4  E1 in Table 20, F1 in Table 21, G1 in Table 22, I1 in Table 24, and J19 and J20 in Table 25 is
5  entirely duplicative.

| KINOSHITA'S TESTIMONY RE ALLEGEDLY IMPOSSIBLE DATA POINTS | DAHN'S TESTIMONY RE ALLEGEDLY IMPOSSIBLE DATA POINTS |
|---|---|
| K13 in Table 2 | No samples impossible in Table 2 |
|  | M9 in Table 3 |
| **P1 and P2 in Table 5** | **P1 and P2 in Table 5** |
| **A1 in Table 16** | A1 and A2 in **Table 16** |
| **B1 in Table 17** | B1 and B2 in **Table 17** |
| **C1 in Table 18** | C1 and C2 in **Table 18** |
| **D1 in Table 19** | D1, D2, and D3 in **Table 19** |
| **E1 in Table 20** | E1 and E2 in **Table 20** |
| **F1 in Table 21** | F1 and F2 in **Table 21**; F3 maybe questionably impossible |
| **G1 in Table 22** | G1 and G2 in **Table 22** |
|  | H1 in Table 23; H2 is questionably impossible |
| **I1 in Table 24** | I1 and I2 in **Table 24**, I3 is questionably impossible |
| **J19 and J20 in Table 25** | J19 and J20 in Table 25 |
|  | **J19 and J20 again in Table 26** |

28  The apparent cumulative nature of Kinoshita's and Dahn's testimony on the alleged

1  impossible, false or fabricated data in the '138 patent is further highlighted by the experts'
2  claims that each has considered and shares the other's opinions expressed in his respective
3  expert report. Conf. Sharma Decl., Exh. 1, ¶ 37, and Exh. 2, ¶ 69. As such, there is no real
4  difference in their opinions, as they both <u>share</u> the opinions expressed by the other on the issue
5  of the alleged impossible, false or fabricated data in the '138 patent.

6  **B.   BYD's Experts Admit They Are Equally Qualified to Address All Aspects of**
7  **Whether a Specific Sample In The '138 Patent Is Impossible**

8  Kinoshita identifies his main area of expertise to be "in the properties of carbon and its
9  application in electrochemical devices such as batteries and fuel cells," and Dahn's as "the
10 practical applications of lithium ion batteries…the electrolyte side of this battery technology."
11 See id., Exh. 3, (Kinoshita Depo. 43:2-5; 47:12-16). Dahn describes his area of expertise as
12 "battery and fuel cell materials," and considers himself "an expert with respect to pretty much all
13 aspects of lithium battery materials," and "the world leader in the development and
14 understanding the carbonaceous materials for use in lithium-ion batteries." Id., Exh. 4, (Dahn
15 Depo. 26:6-17). Despite their self-professed areas of expertise, both Kinoshita and Dahn admit
16 that they are equally capable of testifying on all aspects relating to the issue of whether data in
17 the '138 patent is impossible.

Q:          If an opinion is needed on whether particular specimen
            reported in the '138 patent is one that could possibly
            exist or is one that is impossible, which of yourself and
            Dr. Dahn do you think is better equipped to give an
            opinion on that?

KINOSHITA:  I think we both could equally handle that. I don't know it
            in the samples, in the properties, it's one person or the
            other. We can both, I think, render an opinion.

Q:          Well, do you think that one of you is better than the other to
            do that if only one of you were permitted to do it?

KINOSHITA:  No, I don't think that one is necessarily better than the
            other. I think we're equally capable.

Id., Exh. 3 (Kinoshita Dep., 49:3-21).

MEMORANDUM IN SUPPORT OF MOTION
TO PRECLUDE DUPLICATIVE AND                     5                          CASE NO.: 02-CV-1900B (AJB)
CUMULATIVE EXPERT TESTIMONY

\\\LA - 89207/0001 - 216365 v2

Along the same vein, Dahn cannot identify any area where his expertise stops so as to require Dr. Kinoshita's expertise, and considers himself as an expert on all aspects of lithium ion batteries.

> Q: ..I noticed, when I read your expert report and Dr. Kinoshita's, they seemed tome to overlap very much over much of their subject matter…so, somewhere there must be a point at which your expertise stops, because otherwise there would be no need for Mr. Kinoshita, so where does your expertise stop?
>
> DAHN: I don't know where it stops.

Id., Exh. 4 (Dahn Depo. 30:12-21).

> Q: What do you consider to be the areas in which you are qualified to call yourself an expert?
>
> DAHN: ….I think – I am an expert with respect to pretty much all aspects of lithium ion battery materials.

Id., (Dahn Depo. 25:22-26:10 (excerpts only)).

Indeed, Kinoshita even admits that there is "quite a bit of overlap" in the testimony on the characteristic of carbons. Id., Exh. 3, (Kinoshita Depo. 49:22-50:2).

### III.  ANALYSIS

#### A. The Court Should Preclude Duplicative and Cumulative Expert Witness Testimony On The Issue Of Impossible, False Or Fabricated Data Because It Will Waste Time and Resources

Rule 402 of the Federal Rules of Evidence ("FRE") provides that only relevant evidence is admissible. Relevant evidence is defined by Rule 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination more probable or less probable than it would be without the evidence." Even though relevant evidence is generally admissible, the Court has discretion to preclude or exclude evidence "…by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." FRE 403. In applying FRE 403, numerous courts have precluded or limited expert witness testimony where, as here, it is cumulative to that provided by other witnesses. See Cabrera v. Cordis Corp., 134 F. 3d 1418, 1421-1423 (9th Cir. 1998) (Product liability action, wherein 9th Circuit found that trial

1  court did not abuse discretion in excluding the scientific opinion expert testimony of expert

2  whose testimony "would have been a needless presentation of cumulative evidence."); U.S. v.

3  Marabelles, 724 F. 2d 1374, 1382 (9th Cir. 1984) (Tax evasion case, wherein 9th Circuit affirmed

4  judgment of district court which excluded proposed expert from testifying where proposed

5  testimony was cumulative and duplicative to testimony provided by other witnesses.)

6       This Court has previously made clear that its practice is to preclude expert witnesses

7  from testifying as to cumulative subject matter.

| | |
|---|---|
| MR. PRETTY: | So, they're going to have two cumulative experts.  Well, we're going to have to have two cumulative experts, it seems. |
| THE COURT: | Well, this is not maybe the time to cover all these *in limine* points, but it has not been my practice to allow experts to cumulate.  And as far as I'm concerned, if you've got one good expert on a point, that's enough.  If you have two experts, they have to talk about different things.  They don't get up and talk about the same thing. |

13  See Pretty Decl., Exh. 3 (transcript from April 12, 2004 hearing on BYD's Motion for Leave to

14  File A Second Amended Answer and Counterclaims, 29:21-30:5.)

15       As illustrated in the chart starting on page 4, and in the experts' deposition testimony

16  discussed at pages 3 through 6, there is a substantial overlap in Kinoshita and Dahn's testimony

17  as to the alleged impossible, false or fabricated data in the '138 patent. Further, each expert

18  considers himself as having sufficient expertise to opine on all aspects of the alleged impossible

19  data. Kinoshita admits that both he and Dahn are equally capable of opining on whether

20  particular samples in the '138 patent are impossible. Conf. Sharma Decl., Exh. 3, (Kinoshita

21  Depo. 49:3-21). Dahn's inability to identify any point at which his expertise stops essentially

22  renders Kinoshita's opinion testimony on the duplicative data points redundant. Id., Exh. 4,

23  (Dahn Depo. 26:6-17; 30:12-21). Hence, there is no added probative value to having multiple

24  expert witnesses testifying on this issue, as each can just as easily render an opinion on the issue

25  as the other.

26       Presentation of this cumulative testimony, therefore, would only serve to waste time and

27  resources at trial. Each time that either Dahn or Kinoshita provides repetitive and cumulative

28  testimony, Sanyo will be forced to raise objections, thereby protracting the trial proceedings

even further. Therefore, Sanyo moves the Court for an order precluding any cumulative and duplicative expert witness testimony on the issue of the alleged impossible, false or fabricated data in the '138 patent.

### B. The Court Should Preclude Duplicative and Cumulative Expert Testimony On The Issue of the Alleged Impossible, False or Fabricated Data Because It Will Unfairly Prejudice Sanyo

Relevant evidence or testimony may also be precluded and excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury..." FRE 403; see also Hill v. Rollieri, 615 F. 2d at 890 ("In making this decision the trial court enjoys wide discretion.") "Unfair prejudice" is defined in the Notes to Rule 403 as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Further, the Federal Circuit has held that "if evidence of marginal probative worth necessitates lengthy rebuttal, it imparts disproportionate weight to the issue." Magnavision, Inc. v. Bonneau Co., 115 F. 3d 956, 961 (Fed. Cir. 1997).

If BYD is allowed to present cumulative and duplicative expert witness testimony on the issue of the alleged impossible, false or fabricated data, Sanyo will be forced to present lengthy rebuttals. The repetitious and cumulative presentations of expert testimony on the issue may mislead the jury into placing undue additional weight on the issue, thereby, prejudicing Sanyo. This is the very type of prejudice that Magnavision described. Id. On the other hand, if this Court were to fashion an Order precluding cumulative and duplicative expert testimony on the issue, BYD would not be prejudiced, as it would still be able to present expert testimony on its theory of impossible, false or fabricated data in the '138 patent, so long as such testimony is not cumulative. See e.g. Medtronic Inc. v. Intermedics, Inc., 799 F. 2d 734, 741 (Fed. Cir. 1986) (Holding that trial court's exclusion of portion of expert witness's testimony was not prejudicial because excluded testimony was cumulative of testimony already in the record.)

Cumulative and duplicative testimony on this issue can be avoided at trial if each party was required to select one particular expert witness to opine on all aspects of the issue of the alleged impossible, false or fabricated data in the '138 patent. If multiple experts are selected,

MEMORANDUM IN SUPPORT OF MOTION
TO PRECLUDE DUPLICATIVE AND
CUMULATIVE EXPERT TESTIMONY

8

CASE NO.: 02-CV-1900B (AJB)

\\LA - 89207/0001 - 216365 v2



cumulative and repetitive testimony on the issue <u>can still be avoided</u> if each expert is required to only address those data points, or tables and figures that is not addressed by the other expert from the same side. As Dr. Kinoshita admitted, there is "quite a bit of overlap" in "characteristics of carbons, when you work in that field," since any discussion of carbon characteristics is closely intertwined with the electrochemical properties of a lithium ion battery, which depend on the carbon characteristics. <u>Conf. Sharma Decl.</u>, Exh. 3, (Kinoshita Depo. 49:22-50:2). Hence, requiring each expert to address only those data points, figures or tables not addressed by another expert would prevent repetitious, and cumulative testimony with respect to those specific data.

## IV. CONCLUSION

For the foregoing reasons, Sanyo respectfully requests that this Court preclude duplicative and cumulative expert testimony on the issue of the alleged impossible, false or fabricated data, and further require that (1) only one expert witness be presented to testify on all issues relating to the alleged impossible, false, or fabricated data, or (2) if multiple expert witnesses are presented on the issue, then, each expert witness be precluded from addressing specific data points, or tables and figures addressed by the other expert from the same side.

Respectfully submitted,

Date: September 27, 2004        HOGAN & HARTSON L.L.P.

By: *Sanjesh Sharma*
Stuart Lubitz
Laurence H. Pretty
Sanjesh P. Sharma
Attorneys for Plaintiff
SANYO ENERGY (USA) CORPORATION

# PROOF OF SERVICE

I, **Dolores Valencia**, declare as follows:

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause. My business address is Hogan & Hartson L.L.P., Biltmore Tower, 19th Floor, 500 South Grand Avenue, Los Angeles, California 90071-2611.

On **September 27, 2004**, I served the foregoing document described as:

On all counsel of record in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SANYO ENERGY (USA) CORPORATION'S MOTION TO PRECLUDE DUPLICATIVE AND CUMULATIVE EXPERT WITNESS TESTIMONY ON ALLEGED IMPOSSIBLE, FALSE OR FABRICATED DATA IN THE '138 PATENT**

**Edward C. Kwok, Esq.**
MacPherson Kwok Chen & Heid LLP
2001 Gateway Place, Suite 195E
San Jose, California 95110
Tel.: (408) 392-9250
Fax: (408) 392-9262

[ ] **BY MAIL** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] **BY FACSIMILE** I caused said document to be transmitted by facsimile transmission to the number indicated after the address(es) noted above.

[X] **BY PERSONAL SERVICE** I caused such envelope to be delivered by hand to the addressee(s) as stated above.

[ ] **BY OVERNIGHT COURIER** I caused such envelope to be delivered to UPS for overnight courier service to the offices of the addressee(s) listed on the attached service list.

[X] **FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on **September 27, 2004** at Los Angeles, California.

_____    _____
**Dolores Valencia**
Name                                Signature

02-CV-1900B (AJB)

\\\\LA - 89207/0001 - 195780 v11